**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250155-U

Order filed July 2, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| CORY B. BLIZNICK, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Will County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-25-0155 |
| | ) | Circuit No. 23-MR-351 |
| | ) | |
| BB RENTAL HOMES, LLC, | ) | Honorable |
| | ) | Victoria R. Breslan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Justice Brennan concurred in the judgment.
Justice Davenport dissented.

_____

**ORDER**

¶ 1    *Held*: Plaintiff satisfied the element of a legal tangible interest necessary to pursue a declaratory action. The court did not err by ordering a shared well agreement. Defendant forfeited the argument that it was entitled to the exclusive use of the well.

¶ 2    Defendant, BB Rental Homes, LLC, appeals the Will County circuit court's judgment granting plaintiff, Cory B. Bliznick, the use of a well through an easement by necessity and granting BB Rental Homes use of the same well through an easement by prior use but denying

exclusivity to BB Rental Homes. The judgment also ordered that BB Rental Homes and Bliznick enter into a shared well agreement. BB Rental Homes argues that Bliznick has no legal tangible interest in the well, which it asserts is a requirement to obtain declaratory relief. It further argues that Bliznick failed to establish a need for a shared well agreement. Additionally, BB Rental Homes states that it established its claim for an implied easement by prior use for its exclusive use of the well. We affirm.

¶ 3                                     I. BACKGROUND

¶ 4        This appeal involves three adjacent lots on Lawrence Street in unincorporated Plainfield and a deep well. Bliznick owns lots 117 and 118, and BB Rental Homes owns lot 119. Lots 117 and 119 each contain a single-family home, and lot 118 is a vacant lot.

¶ 5        In 1971, lots 118 and 119 were owned by the same person, but it is unclear whether this individual also owned lot 117. A deep well was permitted to and constructed for lot 118, the vacant lot. No well permits were issued to lot 119. At some point, lot 119 was connected to the well. This well provides the only water source to lot 119, and no other lots were connected to the well for water service.

¶ 6        Since 1971, lots 117, 118, and 119 were owned by several different parties. Around 2018, the Popplewells owned all three lots. Bobbi Zuidema purchased lot 119 in 2020, later transferring the property to BB Rental Homes. Bliznick purchased lots 117 and 118 in 2022.

¶ 7        Bliznick filed a complaint for declaratory judgment in 2023, requesting a declaration stating that he owns the deep well and has the right to connect to the well as the owner of lot 118. Bliznick also requested such other relief as was just and equitable. In 2024, BB Rental Homes filed a counterclaim for an implied easement by prior use, seeking exclusive use of the well.

2

¶ 8    A bench trial was held in February 2025. Bliznick's father, Fred, testified that lot 117 uses a shallow sand well that was hand-pounded into the ground. Fred testified that the Bliznicks noticed dirt in the toilets and stated that he thought the water pressure was low from this well. Fred called a well company to connect to the deep well, and they discovered it was already connected to the house on lot 119. Fred had the property surveyed and they discovered the well is not actually on lot 118 but rather is in the county right-of-way in front of the property. However, all the wells on Lawrence Street line up in the county right-of-way. Fred contacted the health department, which determined the deep well was appropriate to be utilized as a shared well.

¶ 9    Cory Bliznick testified that he wants to connect to the well in front of lot 118, but he does not want to exclude lot 119. He intends to have a shared well agreement. The well is 100 or 150 feet deep, and he believes it can accommodate both properties.

¶ 10    Zuidema testified that in October 2020, her tenant on lot 119 called to report the house was not getting water, so Zuidema hired a company to replace the pump for the well at issue in front of lot 118. She testified that she and anyone who has ever lived on lot 119 maintained the well. Zuidema did not want to share the well because (1) you're "hooked up per se for life with your neighbor," (2) it would be hard to determine how to share expenses, (3) there may be restrictions on watering, and (4) the property value would decrease, making it harder to sell in the future.

¶ 11    In a 2023 letter, the Will County Health Department stated that it had no objection to the well being used as a shared well for the three lots. However, the health department required that a shared well agreement be recorded on the deeds for all affected lots and a copy of the shared well agreement be placed on file with the Will County Health Department.

¶ 12    The trial court entered its written order in March 2025. The court stated that it was likely the well was intended to be dug within the boundaries of lot 118, as that is the lot it was permitted to and was closest to lot 118. The court opined that the well was intended to be used by "one, or all, of the lots in question." The court found that BB Rental Homes was entitled to an implied easement based on prior use and necessity. It also found that Bliznick met the requirements for an implied easement based on necessity. The court noted that BB Rental Homes could not establish a prescriptive easement, and even if the court were to grant a prescriptive easement, it would not grant "exclusivity." The court found that no evidence was presented to show the effects a shared well may have on resale and noted that BB Rental Homes's concerns were merely a possibility rather than a certainty. The court weighed BB Rental Homes's concerns against Bliznick's financial burden of digging a new well and found that Bliznick's burden outweighed BB Rental Homes's desire for exclusive possession. The court found that a shared well agreement was appropriate and equitable, noting that both Bliznick and BB Rental Homes were entitled to use the well in the county right-of-way in front of lot 118. The court's order did not designate the owner of the well because it found that neither party established ownership, and thus did not grant declaratory judgment of ownership to Bliznick. BB Rental Homes appeals.

¶ 13                                    II. ANALYSIS

¶ 14    Initially, we note that on appeal BB Rental Homes does not make an argument that Bliznick did not meet the requirements for an implied easement by necessity as ordered by the court. Therefore, we do not address that issue.

¶ 15    BB Rental Homes first argues that Bliznick has no legal tangible interest in the well and his declaratory judgment action must fail as a result. We review this issue *de novo*. See *Oak Run*

*Property Owners Ass'n, Inc. v. Basta*, 2019 IL App (3d) 180687, ¶ 50. BB Rental Homes misconstrues the nature of the "legal tangible interest" required to maintain a declaratory judgment action. "The elements of a declaratory judgment action are: (1) a plaintiff with a legal tangible interest; (2) a defendant having an opposing interest; and (3) an actual controversy between the parties concerning such interests." *Thompson v. N.J.*, 2016 IL App (1st) 142918, ¶ 30. The first element requires only that Bliznick have "some personal claim, status, or right which is capable of being affected by the grant of [declaratory] relief." *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 493 (1988). The complaint satisfied this requirement by alleging that Bliznick, as lot 118's owner, could access a well permitted to lot 118. BB Rental Homes's standing argument confuses the validity of this asserted right with whether Bliznick could pursue a declaration of that right. See *In re Estate of Zivin*, 2015 IL App (1st) 150606, ¶ 14 ("A standing challenge focuses on the party seeking relief—not on the merits of the controversy—and asks whether that party is entitled to pursue the legal challenge."). In short, Bliznick's claim to well ownership or use of the well is a personal claim capable of being affected by the grant of declaratory relief.

¶ 16 Next, BB Rental Homes argues that Bliznick failed to establish a need for a shared well agreement. BB Rental Homes points to certain facts, such as Bliznick's existing well having passed all inspections for water quality and pressure, to argue that Bliznick failed to establish a legal requirement for BB Rental Homes to enter into a shared well agreement with Bliznick.

¶ 17 Initially, we note that BB Rental Homes fails to cite any legal authority in support of its argument. As such, we may consider this issue forfeited and decline to address it. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (providing that argument must "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record

5

relied on" and that "[p]oints not argued are forfeited"); *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993) ("A reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented [citation], and it is not a repository into which an appellant may foist the burden of argument and research."). Regardless, the facts that BB Rental Homes sets forth and the arguments it makes based upon those facts may be relevant to the issue of whether Bliznick established an implied easement by necessity—an issue it does not raise on appeal—but are not relevant to the issue of whether the court erred in ordering a shared well agreement. Here, the evidence established that the county required a shared well agreement for Bliznick to connect to the well for service. As such, the court's order appears to be one entered to ensure its judgment is enforced. See *e.g.*, *Smithberg v. Illinois Municipal Retirement Fund*, 192 Ill. 2d 291, 297 (2000) ("It is an elementary principle of law that a court is vested with the inherent power to enforce its orders."). In other words, requiring the shared well agreement, as required by the county, ensures that Bliznick will be able to access the well the court awarded him pursuant to the implied easement by necessity. BB Rental Homes has set forth no basis for this court to find that the court erred in exercising its equitable authority by ordering the shared well agreement and thus, we affirm that order.

¶ 18      Lastly, BB Rental Homes argues that it established its claim for an implied easement by prior use. This is a curious argument, as the court granted it an implied easement by prior use and Bliznick has not challenged that decision on appeal. In the section of its brief setting forth the issues presented for appeal, BB Rental Homes frames the issue as whether it established a claim for an implied easement by prior use for the exclusive use of the well. Additionally, in the conclusion, BB Rental Homes states that it has established an implied easement by prior use for its exclusive use of the well. However, its argument section is devoid of any legal authority

6

supporting their alleged right to exclusivity and fails to argue for exclusivity. As such, we consider this issue forfeited and decline to address it. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (providing that argument must "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on" and that "[p]oints not argued are forfeited"); *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993) ("Bare contentions in the absence of argument or citation of authority do not merit consideration on appeal and are deemed waived.").

¶ 19    The dissent contends that declaring ownership of the property on which the well was constructed is somehow necessary to resolve this case. We disagree. The court below determined that the parties presented insufficient evidence to conclude that either was the owner of such property. Neither party challenges that decision on appeal. Simply ruling on the issues that the appellant has framed and argued resolves the case without this court straying from arbiter to advocate by deciding who owns the fee interest in the servient estate when neither party has raised that issue with this court of review. See *People v. Woods*, 2024 IL App (3d) 230592, ¶ 34. " 'In our adversarial system of adjudication, we follow the principle of party presentation.' [citation] The parties ' "frame the issues for decision,' " while the court serves as " 'neutral arbiter of matters the parties present.' " [citation] To put it plainly, courts 'call balls and strikes'; they don't get a turn at bat. [citation]" *Clark v. Sweeney*, 607 U.S. 7, 9 (2025). As such, we do not address who is the owner of the property where the well was constructed.

¶ 20    The dissent also asserts that the failure of the trial court to identify a servient estate constitutes clear error and that judicial restraint does not require this court to affirm a patently defective judgment. First, we disagree that the servient estate has not been identified. The servient estate is the property where the well was constructed and the parties do not dispute such

7

property is a public right of way. Additionally, we disagree that Bliznick is the presumptive owner of the servient estate. Here, simply put, he failed to prove to the trial court that he is the owner as reflected in its ruling.[1] As such, in the eyes of the law, he is not the owner. Further, as it is undisputed that the well sits in the public right of way, it is at least as likely that the county owns the land the well sits on—this record is simply devoid of any definitive evidence on this issue. If the county is the owner and its property is now the servient estate to Bliznick's easement, it is not a necessary party to this action because it has not been deprived of a material right as it stands because: (1) the well has already been constructed and BB Rental Homes, as well as the prior owners of lot 119, have been served by the well for decades, and more importantly, (2) the county has already approved of Bliznick connecting to the well so long as the parties have a shared well agreement, which the court ordered. See *e.g.*, *Emalfarb v. Krater*, 266 Ill. App. 3d 243, 247-48 (1994) (stating that "objections to nonjoinder of necessary parties made after judgment *** will be rejected unless the absent party was deprived of material rights without being heard or the absent party's interests are so interconnected with the appearing parties' interests that the presence of the absent party is absolutely necessary" and those not made parties to a case are not bound by the judgment issued in the case). Based on the foregoing, the trial court's judgment was not patently defective and we simply rule on the issues presented by the parties. We " 'should not sally forth each day looking for wrongs to right. We wait for cases to come to us, and *** we normally decide only questions presented by the parties.' " *Greenlaw v. United States*, 554 U.S. 237, 244 (2008) (quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (1987).

---

[1]Notably, Bliznick acknowledges that the court found that he failed to prove he was the owner of the property. He stated in his brief that the trial court found "that neither party established ownership here."

¶ 21                                    III. CONCLUSION

¶ 22          The judgment of the circuit court of Will County is affirmed.

¶ 23          Affirmed.

¶ 24          JUSTICE DAVENPORT, dissenting:

¶ 25          I respectfully dissent. The majority affirms an order purporting to grant two coexisting "easements" in a well of unascertained ownership. This outcome cannot be reconciled with basic property law.

¶ 26          "Two estates are necessary for an easement appurtenant—the dominant to which the right belongs, and the servient upon which the obligation rests." (Internal quotation marks omitted.) *Downing as Trustee of James Downing Irrevocable Trust v. Somers*, 2023 IL App (4th) 220900, ¶ 15; see *Willoughby v. Lawrence*, 116 Ill. 11, 19 (1886). Here, the trial court declared two dominant estates in the abstract, without identifying a corresponding servient estate. The court did not ascertain the current owner of the well. It likewise did not ascertain the current owner of the land on which the well sits. Indeed, it did not even vaguely consider the possibility of a nonparty owner. By neglecting to ascertain the well's ownership or the ownership of the land on which the well sits, the court failed to identify "the servient [estate] upon which the obligation rests." See *Somers*, 2023 IL App (4th) 220900, ¶ 15; *Willoughby*, 116 Ill. at 19. The purported easement declarations were therefore incomplete and indeterminate, as they recognized only half of the correlative relationship.

¶ 27          My colleagues conclude the missing servient estate is a public right-of-way. *Supra* ¶ 20. I respectfully disagree. What my colleagues deem to be a servient estate is, in my view, nothing more than an encumbrance on property. Our supreme court has repeatedly described a right-of-way as an easement. See *Board of Education of Richland School Dist. No. 88A v. City of Crest*

9

*Hill*, 2021 IL 126444, ¶ 30 (collecting cases). Because an easement is merely a right or privilege in another's real estate (*Beloit Foundry Co. v. Ryan*, 28 Ill. 2d 379, 388 (1963)), it cannot constitute the servient estate for another easement. The judgment thus remains defective for want of a servient estate.

¶ 28        The parties do not raise this glaring defect. Even so, this court may address unbriefed issues to ensure a just and accurate result. See *County of Du Page v. Arjmand*, 2026 IL App (3d) 240408, ¶ 101; *People v. Givens*, 237 Ill. 2d 311, 325 (2010) (a reviewing court may address unbriefed issues when a clear and obvious error exists in the trial court proceedings). The trial court's failure to identify a servient estate constitutes clear error, and irregularities in its ruling make that error all the more obvious.

¶ 29        The trial court's ruling sidestepped Bliznick's *sole* claim. Bliznick alleged he was entitled to access the well as its owner. He did not plead an easement theory in the alternative,[2] nor did he pursue an easement theory at trial. Inexplicably, however, the March 2025 order incorrectly stated Bliznick seeks well ownership *or an easement* and proceeded to confine its analysis to "the law related to easements." Few errors are more conspicuous than misattributing a legal theory to a litigant, then using that theory to avoid the actual claim before the court—only to enter a defective judgment.

¶ 30        The majority states the trial court found the evidence insufficient to determine ownership as to either party (*supra* ¶ 19) and Bliznick failed to prove ownership "as reflected in [the court's] ruling" (*supra* ¶ 20). While I do not question my colleagues' good-faith reading of the record, the

---

[2]"[A] judgment must conform to and be supported by the pleading and proof in the cause." *Fritzsche v. LaPlante*, 399 Ill. App. 3d 507, 522 (2010). While Bliznick's complaint included a general prayer for relief, the complaint pleaded no facts to reasonably support an easement declaration. See *id.* (judgment based on a general prayer for relief must be "supported by the facts alleged in the complaint").

10

trial court's written order identified no evidentiary impediment to a finding of ownership. The court expressly framed the "law related to easements" as the starting point for its analysis and made no attempt to address Bliznick's ownership claim. The written order thus reflected a patently unresolved ownership question. Bliznick's contrary characterization (*supra* ¶ 20 n.1) cannot provide a basis to presume an adverse ownership ruling that is unsupported by the order itself.

¶ 31 Nor can the trial court's "easement" declaration provide a basis to *infer* such a ruling. The purported easement declaration rested, paradoxically, on findings indicative of Bliznick's well ownership. Noting Bliznick had recently purchased lot 118, the court found the well was likely intended to be dug on lot 118; the well was permitted to lot 118; and the well was nearest to lot 118, with a survey placing it only four feet from lot 118. Moreover, the court noted the well was permitted and dug by "the owner of record," apparently in reference to lot 118's prior owner who had secured the well permit in 1971.

¶ 32 Accepting the court's factual findings, Bliznick is the well's presumptive fee owner. *Cf. Dudley v. Neteler*, 392 Ill. App. 3d 140, 143 (2009) (a plaintiff seeking to quiet title may prevail, even without perfect title, if he establishes title superior to that of the defendants). According to the survey referenced by the trial court, the well sits just outside the street-facing boundary of lot 118, in an area BB Rental Homes concedes is a "public easement" and Bliznick concedes is a "public right of way." See *Village of Round Lake v. Amann*, 311 Ill. App. 3d 705, 713 (2000) ("It is settled that a right of way is an easement." (Internal quotation marks omitted.)). Illinois courts have long held that when a municipality owns a public easement in a street, the abutting lot owner's title extends to the street center. See *Sears v. City of Chicago*, 247 Ill. 204, 217 (1910). Thus, as the abutting lot owner to what is presumably a public easement, Bliznick's title extends to the street center. If this presumption holds true, Bliznick may use the well in any manner consistent

11

with the public easement (see *id.*) and for any use that does not "materially interfere with or obstruct" a preexisting private easement. See *McMahon v. Hines*, 298 Ill. App. 3d 231, 239-40 (1998).

¶ 33    In view of the problematic posture of the case, and because "no one can have an easement in his own property" (*Kling v. Ghilarducci*, 3 Ill. 2d 454, 460 (1954)), this court, with one justice dissenting, ordered supplemental briefing on whether lot 118's owner holds the fee title to the land on which the well sits.

¶ 34    BB Rental Homes answered the question in the negative, arguing that applying the "fee-to-center" rule (see *Sears*, 247 Ill. at 217) poses a legal question for the court, and that, in any case, the well sits on a "public easement"—land that had been dedicated to the public. Bliznick's answer, though largely nonresponsive, asserted Will County is the "governing authority" over the land on which the well sits.

¶ 35    Neither answer rebuts Bliznick's presumptive well ownership. BB Rental Homes's continued insistence that the well is located on a "public easement" and Bliznick's assertion that Will County is the "governing authority" do not contradict private fee ownership. Moreover, the record is devoid of any dedication evidence undermining Bliznick's presumptive title to the street center. See *Emalfarb v. Krater*, 266 Ill. App. 3d 243, 252-253 (1994) (setting forth evidentiary requirements for establishing statutory and common law dedication). Where the well at issue is located in an unincorporated area, dedication may not be assumed in the absence of competent evidence. *Bigelow v. City of Rolling Meadows*, 372 Ill. App. 3d 60, 67 (2007). Notably, BB Rental Homes's supplemental brief does not differentiate between statutory and common law dedication. While statutory dedication conveys a fee interest to the public grantee, common law dedication

12

conveys only an easement. *Woodward v. Schultz*, 15 Ill. 2d 476, 482-83 (1959). Assuming dedication occurred, the record does not permit a finding of statutory dedication.

¶ 36 Finally, even absent Illinois's longstanding fee-to-center rule, the record reveals sufficient proof of Bliznick's well ownership. It is undisputed that the well was originally permitted to lot 118, that the Illinois State Geological Survey recorded the well's location at lot 118, and that, as recently as January 2023, the Will County Health Department recognized the well was "located on Lot 118." See 415 ILCS 30/5, 30/5a (West 2022) (Department of Public Health, which may designate municipal, district, county, or multiple-county health departments as its agents, "has general supervision and authority over the location, construction and modification of water wells"). The Illinois State Geological Survey identifies the well as a private well, and nothing in the record suggests the well was ever severed from lot 118.

¶ 37 Concern for judicial restraint, however well-intended, does not compel this court to affirm a patently defective judgment. Because the trial court entered an "easement" declaration that did not account for the well's owner, it failed to "settle and fix the rights of the parties and provide relief against uncertainty." (Internal quotation marks omitted.) *Roland Machinery Co. v. Reed*, 339 Ill. App. 3d 1093, 1099 (2003). I would vacate the defective judgment and remand for the trial court to ascertain the well's ownership, as that remains a prerequisite to any easement declaration.